# CHARLESTON.

AMOS, SHERIFF v. ANGOTTI *et als.*

Submitted May 9, 1916.   Decided May 16, 1916.

1. INTERPLEADER—*Grounds of Relief—Interest of Interpleader.*
   A plaintiff in a bill of interpleader must occupy an impartial position respecting the issue he seeks to have litigated between the claimants.   (p. 452).

2. SAME—*Grounds of Relief—Interest of Claimants.*
   A bill of interpleader, which discloses that plaintiff has personally obligated himself to one of the two claimants of a fund in his hands, respecting such fund, is bad on demurrer.   (p. 453).
   78 W. Va.

3. SAME—*Right of Action—Persons Entitled.*

    A sheriff who has levied an execution upon goods of the debtor, and thereafter releases them in consideration of a check, made and delivered to him by a stranger to the execution, not in payment thereof, but to prevent a sale of the goods, and who is later sued in separate actions by the maker of the check and the execution creditor, can not maintain a bill of interpleader to compel them to litigate between themselves their respective rights to the fund. (p. 453).

(MASON, JUDGE, dissenting.)

Appeal from Intermediate Court, Marion County.

Bill in equity by George E. Amos, Sheriff, etc., against Pasquale Angotti and others. From the decree, defendant A. V. Lynch appeals.

*Reversed, and bill dismissed.*

*Harry Shaw,* for appellant.

*Jas. A. Meredith,* for appellee. .

WILLIAMS, PRESIDENT:

George E. Amos, sheriff of Marion county, filed this bill of interpleader against Pasquale Angotti and others, praying that A. V. Lynch and Michael Powell be required to litigate and have determined which of them is entitled to a certain fund, which said sheriff admitted to be in his hands and brought into court. Lynch and Powell were each proceeding by separate actions at law against plaintiff to recover the fund, and, on motion of plaintiff, they were enjoined from prosecuting those suits. Lynch's demurrer to the bill was overruled, and he and Powell filed separate answers, to which plaintiff replied generally. No depositions were taken. Lynch also moved to dissolve the injunction, and the cause was heard, on the 20th of June, 1914, on the pleadings, exhibits therewith filed and the motion to dissolve the injunction and a decree entered holding the bill presented a proper case for interpleader, overruling the motion to dissolve the injunction and making it perpetual, and decreeing the fund to belong to defendant Michael Powell, and directing the general receiver to pay over to him the sum of $206.37, that being the amount in controversy, less the sheriff's commissions. The court also

decreed costs in favor of plaintiff against A. V. Lynch. From that decree Lynch has appealed.

The bill alleged that, on the 10th of May, 1909, plaintiff, by his deputy M. W. Harris, received from the clerk of the Intermediate Court of Marion county, an execution in favor of Alva E. Watkins against Pasquale Angotti and Frank Borelli, returnable to first Monday in June, 1909, for $142.02, with interest thereon from November 23, 1906, until paid, and $88.50 costs; that on the 26th of May, 1909, he levied the same upon a lot of goods, the property of Frank Borelli; that on the 3rd of June, 1909, Angotti and Borelli caused notice to be served on plaintiff, that they would move the court, on the first day of the August term, 1909, to quash said execution, and on the 14th of June the judge made an order in vacation directing plaintiff to stay proceedings on said execution, until the motion could be heard and disposed of; that at the August term, the motion was heard and overruled, but that the clerk was directed to re-tax the costs, which he did, thereby reducing the taxation from $88.50 to $38.65; that on the 3rd of January, 1910, "the property of said Frank Borelli, being still held under said levy as aforesaid," the said Angotti and Borelli, through their attorney, requested plaintiff not to take possession nor make sale thereof, stating they desired to apply for an appeal from the order of the intermediate court overruling their motion to quash the execution; that defendant, A. V. Lynch, also joined in said request, stating that, in case plaintiff would release the levy and not take possession of or sell the goods, he would give said sheriff his check for $217.69, that being the amount of the execution and costs, and "thereupon the said sheriff, through M. W. Harris his deputy, accepted the said check of the said A. V. Lynch, for the said sum of $217.69, and pursuant to said arrangement, did not take possession of the said goods, nor make sale, but released the said goods from said levy." On the 27th of January, 1910, plaintiff, by another of his deputies, Z. F. Davis, made the following return on said execution: "Money made and paid to Michael Powell, attorney for the within named Alva E. Watkins. The said Property released and delivered to the said Frank Borelli January 27th, 1910." Plaintiff al-

leges that, on the last named date, he paid the sum of $217.69 to Michael Powell, attorney for Alva E. Watkins, less $11.32, the sheriff's commissions, which he retained. On the next day, to-wit, January 28, 1910, two executions were issued by E. S. Amos, a justice of the peace, in favor of Borelli and Angotti, assignees, against Alva E. Watkins and E. F. Watkins, partners as A. E. Watkins and Company, one of which was for $122.42 with interest from October 25, 1906, and $3.70 costs, and the other for $81.43, with interest from October 27, 1906, and $3.35 costs. Plaintiff, by his deputy, M. W. Harris, levied these executions on the property of E. F. Watkins, and exhibits with his bill a copy of the executions and a list of the property levied on, and avers that E. F. Watkins filed a sworn list of all his property claiming the right to exempt it from levy, on the ground that it does not exceed in value $200, and that he is a husband and parent, and thereupon the property was released. Plaintiff avers he was unable to find any property belonging to Alva E. Watkins. On the ......day of December, 1910, Alva E. Watkins and E. F. Watkins, partners as A. E. Watkins and Company, served notice on plaintiff, and on defendants, Angotti and Borelli, that on December 27, 1910, they would move the justice, E. S. Amos, to quash said executions, and, on the day named, he heard said motion, and also a motion made by Angotti and Borelli to amend said executions, and did amend them. The bill further alleges that, on December 14, 1910, the defendant, A. V. Lynch, brought an action against plaintiff, before D. S. Helmick, a justice of the peace, to recover $217.69, the amount of the aforesaid check; that, on the 28th of December, a trial was had and a judgment rendered against said sheriff, who thereupon filed bond and appealed the case to the circuit court, where it remains, undetermined. It is averred that A. V. Lynch and Michael Powell are both claiming the same fund; that the latter served notice on plaintiff on, or about, the 19th of December, 1910, that he would move the intermediate court, on the first day of the January term, 1911, for a judgment for the sum of $142.02, with interest from November 23, 1906, and $37.90 costs, that being the amount of the execution against Angotti and Borelli, averring, in his said notice, that

said sum belonged to him as attorney's fees for services rendered and money paid out, in the suit of Alva E. Watkins against Pasquale Angotti and Frank Borelli. Plaintiff avers that, after Lynch's check for $217.69 had been collected by him and he had paid out the balance thereof, except his commissions of $11.32 to Michael Powell, attorney for Alva E. Watkins, Harry Shaw, attorney for Angotti and Borelli, represented to plaintiff that the check had been collected and the money paid out, under a misapprehension and mistake of facts, and plaintiff thereupon requested Powell to return to him the money, which he did; that Angotti and Borelli claim the right to set off the two executions, which they have against A. E. Watkins and Company, against the execution in favor of A. E. Watkins against them, and assert that it was plaintiff's duty to have so treated said executions. Plaintiff avers he has no interest in the fund in question, and does not collude with any one of the aforementioned parties, all of whom are made parties defendant to the bill; that his only interest is to protect himself and avoid double liability; and that he is not in anyway indemnified by any of the defendants. He tenders with his bill a certified check for the sum of $206.37, and prays that said Michael Powell and A. V. Lynch each be restrained from further proceeding with their actions at law against him, now pending in the intermediate court, and that said defendants be required to answer and set out particularly their respective claims to said fund, and to interplead and litigate their claims among themselves.

To entitle a person to maintain a bill of interpleader, he must occupy the position of a stakeholder, where a recovery against him by one claimant might not protect him against recovery by the other. *Hechmer* v. *Gilligan,* 28 W. Va. 750. He must be wholly impartial toward the respective claimants; his position must be one of indifference as respects the issue between them. *Shaw* v. *Coster et al.,* 8 Paige (N. Y.) 339; 5 Pomeroy's Eq. Jur., sec. 48; and Sands' Suit in Eq., 668. If the controversy among claimants is occasioned by plaintiff's own conduct, he can not maintain interpleader, for in such case his impulse would be to exonerate himself and his position could not be impartial. *Stephenson and Coon* v. *Bur-*

*dette,* 56 W. Va. 109; *Desbrough* v. *Harris,* 5 DeG. M. & G.
439; 43 Eng. Rep. 940; *Crawshay* v. *Thornton,* 2 M. & C. R.
1, 40 Eng. Rep. 541, especially the opinion by Lord Chancellor
Cottenham, at page 548; and Sands' Suit in Eq., 668. He
must not be a wrongdoer, and must be ignorant of the respec-
tive rights of the claimants. Sands' Suit in Eq., *supra;* and
23 Cyc. 8 and 9.

It appears from the bill that Lynch's right to the fund de-
pends upon some kind of an agreement, made on the 3rd of
January, 1910, between himself and plaintiff's deputy, M.
W. Harris, but what that agreement was is not fully stated.
The averments concerning it show that an issue will be raised
between plaintiff and Lynch respecting it, in fact it is averred
that a suit is already brought and now pending. It is not
averred that the check was given in payment of the execution;
if it had been so intended plaintiff would hardly have request-
ed Powell to return the money, after he had collected the
check and turned the money over to him. Plaintiff can not
shift over to Powell the duty of litigating that issue, when his
deputy is the one who caused it. The rights of the two claim-
ants are wholly foreign to each other. Lynch's claim arises
out of an agreement with one of plaintiff's deputies, while
Powell's claim is by virtue of an alleged interest in the exe-
cution. Plaintiff, by his deputy, knows as well as Lynch does,
what title the latter has to the fund, and he can not avoid the
responsibility of deciding it, because the conduct of his deputy
occasioned it. His remedy at law to determine that issue is
full, adequate and complete. Plaintiff is vitally interested in
seeing Lynch's claim defeated. Because, if Lynch should
prevail, he is not relieved from liability to Powell, who was
no party to the arrangement whereby the goods of Borelli
were released from the levy, and hence he does not occupy an
impartial position in respect of the two claimants. It is not
averred that the check was given in payment of the execution,
but only that it was for the purpose of preventing Borelli's
goods from being sold. If the sheriff assented to that arrange-
ment, and thereby suffered the goods to get out of his control,
it is a matter between himself and Lynch alone, depending on
their personal contract, which a court of law is fully compe-

tent to decide; in fact, there is no jurisdiction in equity to determine such question. The statute provides a means whereby plaintiff could have protected himself; he should have taken a forthcoming bond, before releasing his levy. The execution creditor could then have had a remedy on the bond. But for some reason, not stated in the bill, he accepted instead the personal check of a stranger to the execution, not in satisfaction thereof, but, as the bill alleges, to prevent a sale of the goods levied on. The bill discloses that Lynch's claim to the fund in dispute depends on the conditions on which his check was deposited, and whether they have been complied with, and no one is in a position to be so well informed on those matters as Lynch and plaintiff's deputy, M. W. Harris. The bill does not present a proper case for interpleader, and the demurrer thereto should have been sustained.

The decree will, therefore, be reversed, the injunction dissolved and the bill dismissed.

*Reversed and bill dismissed.*

MASON, JUDGE, *(dissenting):*

I cannot fully concur in the opinion of my associates in this case. It may be true that the allegations of the bill are not sufficient to entitle plaintiff to the relief sought, but in my opinion sufficient appears in the case to show that the plaintiff is entitled to relief if the facts were fully pleaded. This, I think, may be done by an amendment without departure from the original bill. In my opinion the bill should not now be dismissed, but the plaintiff should have leave to amend it in the Intermediate Court if he desires.